IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   5:22-CR-457 (BKS) |
| | ) | |
| v. | ) | **GOVERNMENT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| **LISA WALDRON,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that the Court vary and/or depart upward and sentence the defendant to a term of imprisonment of 60 months and a term of three years of post-release supervision. The government also requests that the Court order the defendant pay full restitution in the amount of $13,292.76, and order forfeiture in the form of a money judgment in the amount of $5,948.06. The requested sentence is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553 because the defendant murdered her developmentally disabled son, Jordan Brooks ("Jordan"), and, after he died, stole his Supplemental Security Income ("SSI") benefits. Based on these facts, the defendant pled guilty to eleven counts of theft of government property, in violation of 18 U.S.C. § 641.

**I.    INTRODUCTION AND FACTUAL BACKGROUND[1]**

During all times relevant to this case, the defendant acted as the representative payee for Jordan's SSI benefits. Jordan was eligible for benefits because he had been diagnosed with cerebral palsy. A representative payee is a person appointed by the Social Security Administration ("SSA") to manage another person's benefits and who is tasked with using those benefits exclusively for the

---

[1] The United States adopts the facts as set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Office and filed on June 30, 2023. *See* PSR, ECF No. 21 at ¶¶ 1–17.

needs of the beneficiary. Because Jordan was a minor, the SSA appointed the defendant, his mother, as his representative payee.

Throughout her tenure as representative payee, the defendant did not use Jordan's SSI money for his needs. Instead, bank records demonstrated multiple extraneous and unlawful purchases at places like Victoria's Secret and a Rent-A-Center. *See* PSR ¶ 15. Evidence in the case also revealed that, under the defendant's care, Jordan suffered severe physical neglect. For example, reports from multiple sources described that, when Jordan was living with the defendant, she ignored Jordan's hygiene needs often leaving him to sit in soiled diapers for days.

Because of the defendant's neglect, Jordan died on May 9, 2021. Jordan's death was ruled a homicide. After Jordan's death, rather than alert the SSA of his death, the defendant stayed silent and continued to receive and spend money that was meant for Jordan, which the defendant received solely because of her role as Jordan's representative payee. This went on for almost a year until an SSA employee discovered the issue and stopped the payments.

The indictment in this case charged the defendant with eleven counts of theft of government property, in violation of 18 U.S.C. § 641 (for post-death theft), and 14 counts of representative payee misuse, in violation of 42 U.S.C. § 1383a(a)(4) (for the misuse of benefits while Jordan was alive). The defendant pled guilty on April 14, 2023, to Counts 1-11, charging theft of government property. At sentencing, the government intends to move to dismiss Counts 12-25 of the indictment.

## II.     APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.     Statutory Maximum and Minimum Sentences**

    **a.     Theft of Government Property, 18 U.S.C. § 641**

The defendant's convictions on Counts 1 through 11 for theft of government property subject her to a statutory maximum term of 10 years of imprisonment per count of conviction. 18 U.S.C. § 641. Convictions on Counts 1 through 11 also subject the defendant to a maximum statutory fine

of $250,000, pursuant to 18 U.S.C. § 3571(b)(3), and a maximum term of supervised release of three years, pursuant to 18 U.S.C. § 3583(b)(2). A special assessment of $100 shall also be imposed per count of conviction. 18 U.S.C. § 3013(2)(a). Pursuant to 18 U.S.C. § 3663A, and the terms of the plea agreement, restitution in the total amount of $13,292.76 shall be ordered and, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant shall forfeit to the United States a money judgment in the amount of $5,948.06.

**2.     Guidelines Provisions and request for departure/variance**

   **a.     Grouping**

The counts of conviction are grouped under U.S.S.G. § 3D1.2(d) because the offense level is determined largely on the basis of the total amount of financial loss. United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G.") § 3D1.2(d).

   **b.     Base Offense Level**

Under the federal sentencing guidelines, the "base offense level" for the defendant's convictions is six. U.S.S.G. § 2B1.1(a)(2); PSR ¶ 22.

   **c.     Specific Offense Characteristics**

As set forth in the Offense Conduct section of the PSR, the amount of loss in this case is $13,292.76. Pursuant to U.S.S.G. § 2B1.1(b)(1)(D), because the loss was more than $6,500 but less than $15,000, the offense level is increased by 2 levels. PSR ¶ 23.

Additionally, pursuant to U.S.S.G. § 2B1.1(b)(16), because the offense involved the conscious or reckless risk of death or serious bodily injury, the offense level is increased by 2 levels. However, because the resulting offense level is less than level 14, the offense level is increased to 14. Here, the defendant was the mother of and representative payee for her disabled son. PSR ¶ 24. She was also her son's caretaker and received money from the SSA that she was legally obligated to be use solely for her son's benefit. *Id.* As Jordan's payee and caretaker, the defendant had a duty to ensure that his

needs were being met. *Id.* As noted above, Jordan died on May 9, 2021, and his death was ruled a homicide. *Id.* Jordan's certificate of death notes that neglect was the cause of his, ultimately fatal, injuries. *Id.* The defendant knew that Jordan was dependent on her to meet his basic needs, especially considering that correspondence to the defendant from the SSA directed the defendant that, as Jordan's representative payee, the defendant "must use all payments for the claimant's current needs." *Id.* The defendant did not meet Jordan's needs and, as a direct result, he died. *Id.*

Finally, because the defendant knew or should have known the victim of the offense was a vulnerable victim, two levels are added to the offense level, pursuant to U.S.S.G. § 3A1.1(b)(1). As noted above, the defendant was the representative payee for Jordan's SSI. Jordan was a minor child who had cerebral palsy. PSR ¶ 24. As such, Jordan was entirely reliant on the defendant to meet his basic needs and qualifies as a vulnerable victim. *Id.*

    **d.**    **Adjusted Offense Level**

Based on the enhancements to the offense level outlined in the PSR, the adjusted offense level is sixteen. PSR ¶ 27.

    **e.**    **Acceptance of Responsibility**

The government agrees with the Probation Office's determination that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), as well as a one-level downward adjustment for timely notifying the government and the Court of her intention to plead guilty, pursuant to U.S.S.G. § 3E1.1(b).  PSR ¶¶ 29, 30.

    **f.**    **Criminal History Category**

According to the PSR, the defendant's criminal history category is I. PSR ¶ 37. The government agrees with this determination.

**g.     Guidelines Range and Sentence**

The PSR concludes that the total adjusted offense level is thirteen (13) and the defendant's criminal history category is I.  PSR ¶ 58.  Accordingly, absent any departures or additional variances the federal sentencing guidelines advise that the defendant should receive a term of imprisonment between 12 and 18 months. U.S.S.G. Ch. 5, Pt. A; PSR ¶ 58.  Furthermore, the Guidelines direct that a term of supervised release between one and three years may be imposed. U.S.S.G. § 5D1.2(a)(2), PSR ¶ 61.

**h.     The impact of the defendant's state charges**

As set forth in the PSR, the defendant was arrested on March 16, 2022, on state charges of Manslaughter, Criminally Negligent Homicide, and Endangering the Welfare of an Incompetent/Physical Disabled Person. PSR ¶ 39. These state charges relate to the defendant's role in the death of her severely disabled 17-year-old son, Jordan Brooks. *Id.* On July 17, 2023, in full satisfaction of the state charges, the defendant pled guilty to Manslaughter in the Second Degree, pursuant to N.Y.P.L. § 125.15, and Assault in the First Degree, pursuant to N.Y.P.L. § 120.10. *Id.* The defendant is scheduled to be sentenced in Oswego County Court on September 28, 2023, at which time the defendant faces a mandatory twenty-year state prison sentence for the assault charge alone.

Pursuant to U.S.S.G. § 5G1.3, if "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant of conviction . . . the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."  Because the defendant's actions that resulted in the death of her son are relevant conduct to the instant offenses, as outlined in the PSR, and because a sentence of imprisonment is anticipated in the pending state case, the government agrees that the sentence in this case should be imposed to run concurrently with the anticipated sentence in the state case.

For the reasons set forth above, however, the sentence here, although largely but not entirely symbolic when run concurrently to any state sentence, should stand on its own and should, therefore, reflect the seriousness and full context of the offenses to which the defendant has pled guilty.

i.  **This is the rare case that warrants an upward departure and/or a variance**

The death of Jordan Brooks was not a freak accident or a tragic isolated incident but rather a deliberate and prolonged act of true malice. As the PSR explains, the medical examiner's report regarding the cause of Jordan's death explains malnutrition was a contributing factor and the death was ruled a homicide. PSR ¶ 39.[2]

Although diagnosed with cerebral palsy, Jordan exhibited an above average level of intelligence. *Id.* As such, Jordan understood that his disability required him to be dependent on others. *Id.* Unfortunately, as noted by his school-assigned case worker, Jordan suffered from chronic hygiene issues because of neglect by the defendant, who was his primary caregiver. *Id.* Jordan, who relied on a wheelchair, often came to school in soiled clothes and with the cushion of his wheelchair covered in mold as a result of being soaked in Jordan's urine. *Id.* The photo below shows the condition of Jordan's wheelchair on May 14, 2021:



---

[2] It further noted that Jordan died of "a perforated gastric ulcer due to sepsis, including cutaneous infections and pneumonia due to impaired mobility with decubitus lesions (bedsores) due to perinatal hypoxia/anoxia causing cerebral palsy." *Id.*

Despite numerous overtures by school support staff and in-school triaging of Jordan's most serious hygiene issues, Jordan's condition continued to deteriorate resulting in numerous referrals to Child Protective Services. *Id.*

As part of the investigation into Jordan's death on May 9, 2021, Jordan's physical and occupational therapists were interviewed and provided information about the defendant's neglect of Jordan that was consistent with the information provided by school staff. *Id.* This included that Jordan had once disclosed that during a spring break, he spent 11 days in his wheelchair without ever being put to bed. *Id.*

Jordan was seen by a doctor on September 1, 2020, for new patient intake. *Id.* During the appointment, Jordan weighed 114 pounds. *Id.* At the time of his death, which was also the next time a doctor examined Jordan, he weighed 55 pounds. *Id.* That is a loss of 59 pounds, more than half of Jordan's total body weight, in a period of eight months. *Id.* Jordan also suffered from bed sores covering a large portion of his body and the autopsy photos revealed metal implants protruding from Jordan's skin.[3]

As outlined in the PSR, the defendant's neglect of Jordan, including the misuse of funds earmarked for his care as well as severe and prolonged physical neglect, led to Jordan's death. *Id.* Equally depraved is what the defendant did after she killed her own child—she knowingly and illegally profited from his death. The defendant continued to receive and spend SSI benefits intended solely for Jordan's care for approximately a year after his death despite knowing she was not entitled to that money. Worse even, the defendant's statement to the U.S. Probation Office accepting responsibility for her conduct in this case includes the admission that the defendant "failed to timely notify the Social Security Administration of the death of my son," and that beyond the SSI payments

---

[3] The government is in possession of the autopsy photos and has made them available to the defendant and probation upon request.

the defendant has pled guilty to stealing after Jordan's death, "there were other times where funds provided on behalf of Jordan were not spent for the direct benefit of Jordan." PSR ¶ 20. To be clear, the defendant admits that even while her son wasted away before her eyes and at her own hand, the defendant used Jordan's SSI funds for *her* discretionary expenses.

For years, Jordan was severely neglected by the person he relied on and likely loved most in this world. Jordan's level of intelligence, as noted above, made him stand out in school, but at home Jordan was mistreated to an extent that is difficult to fully comprehend. Tragically, Jordan was intelligent enough to comprehend what his mother was doing to him. He would have been conscious of his worsening condition and in unfathomable pain given his dramatic weight loss and bed sores. Ultimately, Jordan died as a direct result of his mother's malicious neglect. In the months following Jordan's death, many who knew him mourned, but the defendant was not one of them. Instead, the defendant continued to spend Jordan's SSI benefits for her own personal benefit—even spending some of the funds on a trip to Myrtle Beach, South Carolina.

For the reasons set forth above, the government believes that the applicable guidelines range set forth in the PSR, substantially understates the seriousness of the defendant's offenses. Likewise, the commentary to the guideline applicable to 18 U.S.C. § 641 offenses specifically outlines that a sentencing court might depart upward where the crime "risked reasonably foreseeable, substantial non-monetary harm." U.S.S.G. § 2B1.1, app. n. 21(a)(ii). As such, and for the reasons set forth herein, the government respectfully moves for an upward variance and/or departure and requests the Court consider the defendant's conduct as constituting a total offense level of 24, resulting in an advisory guideline range of 51-63 months in prison.

A sentence in this range promotes respect for the law and provides just punishment for the offenses to which the defendant has pled guilty. *See* 18 U.S.C. § 3553(a)(2)(A). The defendant slowly killed her own son and then profited from his death. It is hard to imagine a crime more heinous or a

series of acts more heartless.  Though the guidelines do include an enhancement to the offense level for the reckless or conscious *risk* of death, they do not contemplate a situation where an *actual* death occurred.

Considering the statutory maximum sentence for a single count of theft of government property, in violation of 18 U.S.C. § 641, is 120 months, a sentence of 51-63 months in prison straddles the midpoint of an imprisonment range Congress has deemed appropriate for such an offense. And this case differs significantly from the norm for theft of government cases because of the seriousness of the conduct. *See*, *e.g. United States v. Richart*, 662 F.3d 1037, 1043 (8th Cir. 2011) (affirming an upward variance and/or departure from 0-6 months on an 18 U.S.C. § 1001 charge to the statutory max of 60 months because the defendant lied to investigators about murdering her child). Because there are very few, if any, factual scenarios that fall within the purview of 18 U.S.C. § 641 and are as reprehensible as the offense conduct here, the government believes a sentence of 60 months is sufficient, but not greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2).

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

Based on all of the information before the Court, the government respectfully requests that the Court vary upwards or depart from the applicable Sentencing Guideline range, as outlined above, and sentence the defendant to a term of imprisonment of sixty (60) months and a term of post-release supervision of three years. The government submits that the recommended sentence adequately reflects the statutory factors to be considered under 18 U.S.C. § 3553(a) in imposing a sentence, particularly:

> (1)   the nature and circumstances of the offense and the characteristics of the defendant;
> (2)   the need for the sentence imposed—
>    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B)   to afford adequate deterrence to criminal conduct; [and]

      (C)   to protect the public from further crimes of the defendant.

The government reserves the right to respond to defense arguments raised for the first time after filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable guidelines range on a ground not previously identified by the parties or in the PSR, the parties are entitled to notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

Respectfully submitted this 29 August 2023,

                                CARLA B. FREEDMAN
                                United States Attorney

                                */s/ Adrian S. LaRochelle*
                                */s/ Paul Tuck*
By:   Adrian S. LaRochelle (Bar Roll. No. 710266)
       Paul Tuck (Bar Roll No. 520814)
       Assistant United States Attorneys

## Certificate of Service

      I certify that, on August 29, 2023, I filed the Government's Sentencing Memorandum via the Court's ECF system. The filing of the memorandum sent a contemporaneous email message to all counsel of record via email.

<u>/s/ Paul J. Tuck</u>
Paul J Tuck